## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NAJAMUL HASAN and N FAMILY INC.,<br>an Illinois Corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 08 C 774 |
| | ) | |
| VILLAGE OF SCHAUMBURG, and | ) | JUDGE NORGLE |
| THOMAS FARACE, TIMOTHY | ) | |
| OSTERMAN, and J. CHRISTOPHER | ) | |
| HUFF, individually and in their official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER

NOW COMES the VILLAGE OF SCHAUMBURG, THOMAS FARACE, TIMOTHY OSTERMAN and J. CHRISTOPER HUFF, defendants herein, by Jack M. Siegel, Iain D. Johnston, Adam Kingsley, Holland & Knight LLP, their attorneys, and in Answer to the Complaint heretofore filed herein, says as follows:

## COUNT I
## SECTION 1983 - DUE PROCESS

1.      This is an action for violations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. §1983 based on Defendants' discriminatory and retaliatory denial of Plaintiffs' requests for special use permits and other actions, which resulted in the taking of property rights and interference with their right to make use of their property. Defendants' actions violated Plaintiffs' substantive due process rights and rights to equal protection under the law pursuant to 42 U.S.C. §1983. This Court has jurisdiction under 28 U.S.C. §1343 and 42 U.S.C. §1983. Venue is proper in this District because all parties reside in Cook County, Illinois.

**ANSWER:**    Defendants admit this action purports to be brought under 42 U.S.C. §1983, but deny that the Complaint states a cause of action under 42 U.S.C. §1983, but is merely a zoning case which belongs in the state court.

2.      Plaintiff, NAJAMUL HASAN, is a resident of Hoffman Estates, Cook County, Illinois, Plaintiff, N FAMILY INC, is an Illinois corporation and resides in Cook County. N FAMILY INC is the owner pf property commonly known as 825 Wise Road in Schaumburg. Plaintiff HASAN is the owner of N FAMILY INC. Plaintiffs will hereinafter be collectively referred to in the singular as Plaintiff.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in this paragraph and neither admit nor deny.


3.      Defendant VILLAGE OF SCHAUMBURG ("VILLAGE"), is a municipal corporation incorporated under the laws of the State of Illinois. It is located in Cook County, Illinois.

**ANSWER:**    Defendants admit the allegations therein contained.


4.      Defendant THOMAS FARACE is employed by Defendant VILLAGE as a Senior Planner in the VILLAGE's Zoning Department and his duties include reviewing applications for special use permits and signing off on zoning related forms. Defendant TIMOTHY OSTERMAN is employed by Defendant VILLAGE and his duties include issuing tickets for code violations of the VILLAGE's building and zoning rules. Defendant J. CHRISTOPHER HUFF is employed by the VILLAGE as Director of Community Development and is responsible for making recommendations to the Zoning Board of Appeals and supervises FARACE and OSTERMAN. Each of these individual defendants reside in the Northern District of Illinois and worked for Defendant VILLAGE at all times relevant to this complaint.

**ANSWER:**    Defendants admit the allegations therein contained.


5.      Defendant VILLAGE maintains zoning classifications for property within the Village of Schaumburg. If an owner or prospective property owner wants to open a business within a specifically zoned area, that individual may apply for a special use permit to conduct the proposed business. The application is first reviewed by the VILLAGE's Community Development Department which then presents its recommendations to the VILLAGE's Zoning Board of Appeals. The recommendation of the Boning Board of Appeals is then presented to the VILLAGE's Board of Trustees for a final decision on the owner's application for a special use permit.

**ANSWER:**   Defendants admit the Village has a Zoning Ordinance but denies that it is necessary to secure a special permit to conduct any business.  That special uses are required only for specific enumerated uses as appear in the Zoning Ordinance.

6.      Defendants have made unreasonable and arbitrary actions and decisions from 2004 through 2007, which collectively interfered with Plaintiff's ability to use the Wise Road property. Defendants repeatedly and improperly recommended against approval and denied special use permits for selling used cars and rental of trucks from 2004 through 2007, and engaged in continued harassment of Plaintiff because of his religion (Muslim) and national origin (Middle Eastern). Defendants have further harassed Plaintiff and interfered with his use of his property based on discrimination in retaliation for complaints Plaintiff made about being discriminated against and harassed and subjected to unreasonable and arbitrary decisions.  The continued arbitrary, discriminatory and retaliatory actions taken against Plaintiff forced Plaintiff to close his business in November of 2007, thereby denying him the use and enjoyment of his property.

**ANSWER:**   Defendants deny each and every allegation therein contained.

7.      In or about December of 2003, soon after Saddam Hussein was captured in Iraq, a VILLAGE employee came to Plaintiff's other business location in Schaumburg and asked if he was "Hussein." When Plaintiff corrected the employee stating that his name was "Hasan," the employee demanded to see Plaintiff's business license. This was the first time that anyone from the VILLAGE ever asked to see his business license.

**ANSWER:**   Defendants deny the allegations of the first two sentences therein contained and say defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

8.      Plaintiff submitted his application for a special use permit in May of 2004 to lease and rent motor vehicles, and to buy and sell motor vehicles on a wholesale basis and occasional retail basis at the property located on 825 West Wise Road in Schaumburg.  Plaintiff wanted to first obtain approval for a special use permit before finalizing his purchase of this property.

**ANSWER:**   Defendants say that the plaintiff submitted an application for a special use permit in May of 2004 to lease and rent motor vehicles and said application was subsequently granted.

Defendants deny that the application for a special use was for sale of motor vehicles. Defendants deny that the 2004 application was to sell motor vehicles on a wholesale basis. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that plaintiff wanted first to obtain approval for a special use permit before finalizing his purchase of this property. Defendants aver that Ordinance No. 0-4-102, attached hereto and made part of this Answer as Exhibit A is an ordinance granting a special use for an automobile leasing and rental facility adopted on July 13, 2004 pursuant to the request of the plaintiff.

9.     When Plaintiff applied for a special use permit in May of 2004, he included a letter advising the VILLAGE and Zoning Board that he also wanted to use the Wise Road property for wholesale buying and selling of cars that would be leased and rented to his customers, and to occasionally sell a leased car to a customer at the expiration of the lease if that individual so desired. The letter also explained that he would be applying for a dealer's license from the State of Illinois to engage in the sale of cars but that his primary business would be selling and leasing. A copy of this letter is attached hereto as exhibit "A". FARACE told Plaintiff that since the buying and selling would be ancillary to his leasing and rental business, he did not need express authorization for this in the special use permit.

**ANSWER:**     Defendants deny that the request was to use the Wise Road property for wholesale buying and selling of cars. Defendants deny each and every allegation of said paragraph 9.

10.     In or about June of 2004, after Plaintiff submitted the special use application, FARACE told Plaintiff that he must agree to an "interconnect" to the adjacent property which would allow vehicular traffic to drive across Plaintiff's property in order to gain access to the adjacent property. When Plaintiff objected to this, FARACE falsely claimed that VILLAGE rules required this access and he would not obtain a special use permit if he did not agree to the interconnect.

**ANSWER:**     Defendants deny the allegations therein contained.

11.     In June of 2004, the VILLAGE's Zoning Board approved Plaintiff's request for a special use permit to rent and lease cars and rejected FARACE's recommendation that Plaintiff should allow for an interconnect through his property to the adjacent property.

4

**ANSWER:** Defendants admit that in June 2004, the Zoning Board recommended that plaintiff's request for a special use permit to rent and lease the cars should be approved and say that the Village Board subsequently approved the recommendation by the Zoning Board and granted a special use permit to rent and lease cars. Defendants say that the granting of the special use permit was the action of the Village Board in its legislative capacity. Defendants admit that the plaintiff was not required by the Village to allow an interconnection through his property to the adjacent property.

12.    On July 20, 2004, OSTERMAN came to Plaintiff's other business location and gave Plaintiff a ticket for an alleged code violation at 825 Wise Road. Since Plaintiff had not yet purchased this property, he asked why he was being given this code violation. OSTERMAN claimed that Plaintiff's name was on the liquor license for the restaurant that had been on the 825 Wise property. Plaintiff explained that this was not correct and that as a Muslim, he would never have his name on a liquor license. OSTERMAN and the Village refused Plaintiff's request to provide a copy of the alleged liquor license which Defendants falsely claimed has his name on it. Plaintiff complained to HUFF about this incident but no action was taken.

**ANSWER:** Defendants deny the allegations of said paragraph. Defendants deny that Osterman gave the plaintiff a ticket for alleged code violations. Defendants deny that Osterman and the Village ever were requested a copy of an alleged liquor license for the premises which had previously been occupied by a restaurant. Defendants admit that plaintiff complained to Huff but there was no basis for any complaint. Defendants deny that Osterman or the Village refused plaintiff's request to provide a copy of an alleged liquor license.

13.    After Plaintiff purchased the Wise property on July 21, 2004, and obtained the special use permit from the VILLAGE, he applied for a building permit. When there was a delay in getting the building permit, he made repeated calls to FARACE about the status of the building permit. FARACE falsely told Plaintiff he did not know why there was a delay and said he had no knowledge of who may be holding up approval.

**ANSWER:**    Defendants deny that the building permit was delayed and aver that the plaintiff was informed of deficiencies in the application and upon a completed application, a building permit was issued in due course.  Defendants admit that after the plaintiff received a special use permit to rent and lease motor vehicles, he applied for a building permit.  Defendants deny each and every other allegation of said paragraph but aver they informed the plaintiff of defects in the building permit application which were subsequently remedied.  Defendants deny that the building permit was being held up for any reason once the application the application had been completed.

14.    In August of 2004, Plaintiff discovered that FARACE had been holding the permit on his desk and delaying approval of the permit. When Plaintiff discovered this, FARACE told Plaintiff that the building permit would not be approved and that he must reapply for his special use permit that was already approved before he could obtain a building permit. Plaintiff finally received the building permit only after he complained to the VILLAGE Manager.

**ANSWER:**    Defendants deny each and every allegation of paragraph 14.  Defendants aver that the plaintiff promptly received his building permit when the application had been completed in the manner required by the ordinances of the Village.

15.    In September of 2004 the VILLAGE and FARACE signed a zoning certificate form to allow Plaintiff to obtain a dealer's license from the Secretary of State. As Plaintiff had noted in the letter submitted with the application for a special use permit, the dealer's license was needed to sell and buy motor vehicles at the property.  Plaintiff advised FARACE that he needed the VILLAGE to sign the zoning (Certificate to obtain the dealer license to buy and sell cars so the Secretary of State could verify that this would be in compliance with the VILLAGE's zoning laws for the Wise property. The application for a dealer's license reviewed by FARACE before signing the zoning certificate specifically noted that Plaintiff would be selling used cars.

**ANSWER:**    Defendants admit that Farace signed a form which allowed the plaintiff to obtain a license from the Secretary of State.  Said form covered the rental of motor vehicles and did not authorize the sale of motor vehicles at the property.  Defendants deny that the certificate

authorized the plaintiff to sell and buy motor vehicles at the property in violation of the Village

Zoning Ordinance and say that the certificate was a general form provided by the Secretary of

State. The Secretary of State had no authority to amend the zoning ordinance of the Village and

thereby permit an unauthorized use. Defendants deny that the plaintiff advised Farace that he

needed the Village to sign the Zoning Certificate to obtain a license to buy and sell cars.

Defendants deny that the execution of said form could in any way permit a use which was not

authorized by the Zoning Ordinance on the subject property. Defendants deny that the

application reviewed by Farace before signing the Zoning Certificate specifically noted that the

plaintiff would be selling used cars. Defendants admit that the plaintiff advised Farace that he

needed the Village to sign the Certificate in order to rent or lease cars in compliance with the

Village's Zoning Ordinance. Defendants deny that the application for the dealer's license

reviewed by Farace would give authority to sell used cars in violation of the Village Zoning

Ordinance.

16.    On February 8,2005, the VILLAGE approved Plaintiff s proposed sign for the
Wise property. The sign had the name of Plaintiff s rental and leasing business and the words
"Used Car Dealer". The VILLAGE proposed various revisions to the wording on this sign before
approving the sign and the words "Used Car Dealer" in February of 2005. A copy of this
approval is attached hereto as exhibit "B".

**ANSWER:**    Defendants admit that the Village approved the plaintiff's proposed sign but say

that said approval was issued in error insofar as the sign contained the words "Used Car Dealer".

Defendants aver that the approval in error of the sign could not authorize a use not permitted

under the Zoning Ordinance.

17.    In March of 2005, Plaintiff was told that the landscaping on his property did not
comply with a recommendation from the VILLAGE's planning department. The VILLAGE
claimed while Plaintiff planted the proper trees, some trees were three (3) feet shorter than

7

desired and some trees were too narrow. Plaintiff was directed to pull up these trees at his own cost and replant new trees that were three (3) feet higher and a little wider. When the Zoning Board approved his special use permit, it did not specify the height or width of these specific trees. Plaintiff's complaints to HUFF about FARACE on this matter were ignored.

**ANSWER:**    Defendants admit that the plaintiff was told the landscaping on his property did

not comply with the ordinances of the Village (not the recommendation of the Village's Planning

Department).    Defendants further aver that the plaintiff did not comply with his agreed

landscaping plan.  Defendants admit that the plaintiff planted trees which did not meet the code

requirements and the plaintiff was required to meet the ordinances respecting landscaping.

Defendants aver that the Zoning Board is not concerned with landscaping and a special use

permit approved by the Village Board would not specify the height or width of trees which

matters were subject to Village ordinances.  Defendants deny that plaintiff's complaints were

ignored.


18.    From December of 2005 through January of 2006, and on many dates thereafter, OSTERMAN drove onto Plaintiff's property right in front of Plaintiff's office, sat in his car for several minutes staring at Plaintiff or Plaintiff's employees, and blocked some of Plaintiff's customers from exiting or entering the property. When Plaintiff asked OSTERMAN to move his vehicle since it was blocking customers, he refused until Plaintiff took out a camera. Plaintiff's complaints to Defendants about this were ignored.

**ANSWER:**    Defendants deny each and every allegation therein contained.


19.    In January of 2006, Plaintiff was told he must remove the sign that the VILLAGE previously approved. The VILLAGE now claimed that Plaintiff was not allowed to sell cars at this location. This was the first time Plaintiff was told he could not sell cars at this location.

**ANSWER:**    Defendants admit that plaintiff was told that portion of the sign alleging that he

was a used car dealer had to be removed and admit that the Village indicated to the plaintiff he

was not allowed to sell cars at this location.  Defendants deny that this was the first time plaintiff

was told he could not sell cars at this location.

8

20.    In June of 2006, HUFF recommended against approval and the VILLAGE denied Plaintiff's application for a special use permit to sell cars though FARACE, on behalf of the VILLAGE, had previously signed the zoning certificate form that allowed Plaintiff to obtain a dealer's license to sell cars and although Defendants approved his sign that referred to "Used Car Dealer".

**ANSWER:**    Defendants admit that the Village denied the plaintiff's application for a special

use permit to sell cars at the location.  Defendant denies that Farace's and the Village's approval

of the zoning certificate allowed the plaintiff to sell cars at the  Wise location and aver the

erroneous approval of a portion of the sign referring to "Used Car Dealer" could not supersede

the requirements of the Zoning Ordinance.


21.    Defendants approved other businesses to sell cars in the same zoned area as Plaintiff. None of the other owners of businesses that sold cars were Muslim or Middle Eastern.

**ANSWER:**    Defendants deny the allegations therein contained.


22.    After Defendants refused to allow Plaintiff to sell cars at Wise Road, Plaintiff tried to rent trucks at this property. In or about December 2006, OSTERMAN told Plaintiff he could not lease trucks from his property unless he obtained a specific special use permit. Plaintiff applied for a special use permit to lease trucks in December of 2006.

**ANSWER:**    Defendants admit that plaintiff could not rent trucks at the Wise Road property

without a special use permit and admit the plaintiff applied for a special use permit to lease

trucks in December of 2006.  Defendants deny that Osterman told the plaintiff anything.


23.    In of about February of 2007, Defendants denied Plaintiff's request for a special use permit to lease trucks. During the application process, Plaintiff offered to make whatever changes were needed to his property, and agreed to limit the number and type of trucks that would be parked on his property at any one time. The VILLAGE's Board of Trustees refused to allow Plaintiff to lease any trucks on his property though a business in the same zoning area and near Plaintiff was allowed to lease trucks. This other business owner was neither Muslim nor Middle Eastern.

**ANSWER:**   Defendants admit that on or about February of 2007, the President and Board of

Trustees denied the plaintiff's request for a special use permit to lease trucks.  Defendants deny

that a business in the same zoning area and near plaintiff was allowed to lease trucks.


24.   Plaintiff closed his business in November of 2007 as a result of Defendants'
continued and repeated discriminatory and arbitrary decisions to deny him a special use permit to
sell cars and to lease trucks. Plaintiff continued to use the building to do necessary paperwork
but did not conduct any business at the property, After Plaintiff gave Defendants notice that he
was closing his business, several VILLAGE employees made stops at Plaintiff's property, stared
at Plaintiff when he was inside his building, and sent notices to Plaintiff demanding that he
remove all possessions from the building though he owned the property.

**ANSWER:**   Defendants deny the allegations therein contained.


25.   Plaintiff has since been unable to lease or sell the Wise Road Property because the
VILLAGE has refused to approve any proposed businesses that prospective lessees or buyers
wanted to conduct on this property.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in this paragraph as to why the plaintiff has been unable to lease or sell

the Wise Road property.  Defendants deny they have refused to approve any proposed businesses

that prospective lessees or buyers wanted to conduct on this property.


26.   Defendants' actions and decisions were all conducted under color of state law.
Defendants' actions and decisions collectively acted to deny Plaintiff the use of his property
without due process of law. Defendants' decisions were unreasonable, arbitrary and capricious
and based on discrimination against Plaintiff's religion and national origin, and in retaliation for
making complaints about VILLAGE employees such as the Defendants OSTERMAN, HUFF,
and FARACE. Defendants' actions violated Plaintiff's due process rights under 42 U.S.C. §1983.

**ANSWER:**   Defendants deny each and every allegation therein contained.


27.   Defendants' actions deprived Plaintiff the use and enjoyment of his property and
caused him to lose substantial money since his business became unprofitable without the ability

to sell and buy cars on a wholesale basis or to lease trucks. Plaintiff also lost money that was invested in the building and development of his business on Wise Road. Defendants' actions also caused Plaintiff to suffer emotional distress.

**ANSWER:**    Defendants deny each and every allegation therein contained, except that the

defendants have no knowledge as to whether the plaintiffs lost money that was invested in the

development of his business and demand strict proof thereof.  Defendants deny that any actions

of the Village could cause the plaintiff to suffer emotional distress.  That plaintiff purchased the

Wise Road property with actual knowledge the zoning prohibited the sale of cars and leasing of

trucks and any hardship was self-created.  Defendants are without knowledge or information

sufficient to form a belief as whether the plaintiff lost money and deny all remaining averments.


28.    The individual Defendants FARACE, HUFF, and OSTERMAN, knew that their actions violated 42 U.S.C. §1983 because they were based on discrimination, in retaliation for complaints Plaintiff made against them, and were intended to deprive Plaintiff of the use of his property. These actions of the individual Defendants were performed knowingly, intentionally, and maliciously. Plaintiff is entitled to an award of punitive damages against the individual Defendants because they knew or should have known that their actions violated the law.

**ANSWER:**    Defendants deny the allegations therein contained.


29.    Plaintiff demands a jury trial.

**ANSWER:**    Defendants admit the plaintiff demands a jury trial but say that the Complaint

fails to state a cause of action for federal relief.


**FOR FURTHER AND AFFIRMATIVE DEFENSES,** defendants say as follows:

A.    Count I fails to state a cause of action for substantive or procedural due process.

11

B.     That the allegations of Count I indicate that this is a purely zoning dispute which properly belongs in the state court and said Count I fails to state a federal cause of action under §1983.

C.     That the failure to grant requested zoning relief does not rise to a federal offense nor involve substantive or procedural due process.

D.     That the plaintiff purchased the Wise Road property with actual or constructive knowledge he could not sell cars or rent trucks at that location.

E.     Defendants are entitled to qualified immunity.

F.     To the extent plaintiff's claims are based on actions occurring more than two years ago, the claims are barred by the statute of limitations.

**WHEREFORE,** it is respectfully prayed that Count I be dismissed and judgment be entered for the defendants who shall have their costs and attorneys fees.


## COUNT II
## SECTION 1983 - EQUAL PROTECTION

1.-26.   Plaintiff, realleges ¶¶ 1 through 26 of Count I as ¶¶ 1 through 26 of this Count II.

**ANSWER:**   Defendants reallege their answers to paragraphs 1 through 26 of Count I as if said answers were set forth herein in haec verba.


27.     Defendant VILLAGE's decision to deny Plaintiff's request for a special use permit to sell cars in or about June of 2006 and its denial to lease trucks in or about February 2007 was arbitrary, unreasonable, capricious, and discriminatory.

**ANSWER:**   Defendants deny the allegations therein contained.


28.     There are at least 5 other businesses that were allowed to sell used cars which were located in the same zoning area as was Plaintiff, Defendant claimed that three of these

12

businesses were allowed to continue selling cars because they predominantly sold cars wholesale, Plaintiff's business would primarily be to lease and rent cars and the buying and selling that he would do would have been limited, and primarily wholesale.

**ANSWER:**    Defendants deny there are at least five other business that were allowed to sell used cars which were located in the same zoning area as was the plaintiff.  Defendants say that they have no knowledge as to what the plaintiffs primary business would be but say that the buying and selling of cars was not permitted at the Wise Road property and the denial of the request for a special use was the reasonable legislative act of the corporate authorities of the defendant Village.

29.    Plaintiff also asked to sell used cars on a very limited retail basis when the individual who leased one of his cars asked to purchase the vehicle. Plaintiff's request was denied though two other businesses which did not have a special use permit were allowed to continue selling vehicles on a retail basis.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to why the plaintiff asked to sell used cars.  Defendants say that the denial of plaintiff's request to sell used cars in violation of the Zoning Ordinance was a reasonable and appropriate exercise of the defendants' zoning authority.

30.    Defendant has allowed other businesses to lease trucks, including at least one business close to Plaintiff's property and which was subject to the same zoning.

**ANSWER:**    Defendants deny the allegations therein contained.

31.    Defendant VILLAGE's approval of special use permits and enforcement of zoning laws to allow some businesses to sell used cars and lease trucks while denying Plaintiff the same rights violated Plaintiff s rights to equal protection of the law under 42 U.S.C, § 1983. Defendant VILLAGE's rationale for denying Plaintiff's requests while allowing other businesses to conduct his business was arbitrary, unreasonable, and based on discriminatory reasons due to Plaintiff's religion and national origin. Defendants actions and decisions were all conducted under color of state law.

13

**ANSWER:**    Defendants deny the allegations therein contained.

32.    Defendants' actions and decisions effectively denied Plaintiff the use and enjoyment of his property and caused him to lose substantial money since his business became unprofitable without the ability to sell and buy cars or to lease trucks. Plaintiff also lost money that was invested in the building and development of his business on Wise Road. Defendants' actions also caused Plaintiff to suffer emotional distress.

**ANSWER:**    Defendants deny the allegations therein contained except to say they have no

knowledge of whether the plaintiff lost money or why his business became unprofitable.

33.    Plaintiff demands a jury trial.

**ANSWER:**    Defendants admit the plaintiff demands a jury trial but say that the allegations of

Count II fail to state a cause of action as a matter of law which would entitle him to a jury trial.

**AS FURTHER AND AFFIRMATIVE DEFENSES TO COUNT II,** the defendants

say as follows:

A.    The allegations of Count II fail to state facts sufficient to state a cause of action

for equal protection for the reason that there are no allegations of similarly situated properties or

persons who have been granted relief similar to that denied to the plaintiff.

B.    The defendants restate and reallege the affirmative defenses of Count I as

affirmative defenses to Count II as if set forth herein in haec verba.

C.    Defendants are entitled to qualified immunity.

D.    To the extent plaintiff's claims are based on actions occurring more than two

years ago, the claims are barred by the statute of limitations.

**WHEREFORE,** it is respectfully prayed that Count II be dismissed and judgment be

entered for the defendant which shall have its costs and attorneys fees.

14

VILLAGE OF SCHAUMBURG,
THOMAS FARACE, TIMOTHY
OSTERMAN and J. CHRISTOPHER
HUFF, Defendants,

By: ___ s/ Jack M. Siegel _____
                    One of Their Attorneys

Jack M. Siegel
Iain D. Johnston
Adam Kingsley
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603
   *Attorney for Defendants*

# 5112671_v2

15

**EXHIBIT A**

APPROVED

PUBLICATION OF:

ORDINANCE NO. 04-102

AN ORDINANCE GRANTING SPECIAL USE FOR AN AUTOMOBILE LEASING AND
RENTAL FACILITY IN THE M-1 DISTRICT FOR U-SAVE AUTO RENTAL
CASE NO. Z0405-06

ADOPTED:  JULY 13, 2004

PUBLISHED IN PAMPHLET FORM PURSUANT TO AUTHORIZATION AND DIRECTION
OF THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF SCHAUMBURG
ON JULY 14, 2004

*Exhibit A*

ORDINANCE NO. 04- <u>102</u>

<u>AN ORDINANCE GRANTING SPECIAL USE FOR AN AUTOMOBILE LEASING AND RENTAL FACILITY
IN THE M-1 DISTRICT FOR U-SAVE AUTO RENTAL</u>
CASE NO. Z0405-06

WHEREAS, the Zoning Board of Appeals of the Village of Schaumburg conducted a public hearing on June 30, 2004 to consider a request for a Special Use for an automobile leasing and rental facility in the M-1 District for U-Save Auto Rental, Case No. Z0405-06; and

WHEREAS, the Zoning Board of Appeals has recommended the granting of said Special Use for an automobile leasing and rental facility in the M-1 District; and

WHEREAS, the President and Board of Trustees of the Village of Schaumburg have determined that the application is in full compliance with the regulations and requirements of the Zoning Ordinance, and that granting of said Special Use for an automobile leasing and rental facility in the M-1 District is in the best interest of the Village;

NOW, THEREFORE, BE IT ORDAINED BY THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF SCHAUMBURG:

SECTION ONE: That a Special Use for an automobile leasing and rental facility in the M-1 District, in accordance with Title 15, Chapter 154, Section 154.188 (C) (8) of the Zoning Ordinance, be and it is hereby granted on property legally described as:

THE WEST 100 FEET OF LOT 2 IN BLOCK 1 IN CENTEX-SCHAUMBURG INDUSTRIAL PARK UNIT 1, BEING A SUBDIVISION IN THE NORTH ½ OF SECTION 33, TOWNSHIP 41 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF REGISTERED IN THE OFFICE OF THE REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON MAY 6, 1970 AS DOCUMENT NO. 2501940.

which property is located at 825 W. Wise Road.

SECTION TWO: That said Special Use for an automobile leasing and rental facility in the M-1 District, be and it is hereby granted subject to compliance with the following conditions:

1. A streetlight contribution of $3,150.00 is required. This amount is based upon 100 linear feet of frontage along Wise Road and a unit cost of $31.50 per lineal foot. The payment shall be made in installments over a phased period of two years per the following payment schedule: $1,050.00 payable prior to the issuance of a building permit for U-Save Auto Rental; $1,050.00 payable on or before June 30, 2005; and $1,050.00 payable on or before June 30, 2006.
2. A parkway tree contribution of $1,250.00 is required. This amount is based upon 100 linear feet of frontage on Wise Road and a unit cost of $12.50 per lineal foot. The payment shall be made in installments over a phased period of two years per the following payment schedule: $416.66 payable prior to the issuance of a building permit for U-Save Auto Rental; $416.66 payable on or before June 30, 2005; and $416.68 payable on or before June 30, 2006.
3. Prior to the issuance of a land development permit, the petitioner shall revise the engineering plans and submit five copies to the Director of Community Development for review and approval, illustrating the following:

    a. The existing handicap ramps in front of the building are not properly textured in accordance with current ADA requirements. All of these ramps must be removed and replaced with standard IDOT textured surfaces.

    b. The existing speed bumps must be removed from the parking lot.

    c. The existing concrete masonry units must be removed from the existing paved area at the back of the building. If a barrier is needed for that area, a new concrete barrier curb must be constructed.

4. Prior to the issuance of a building permit, the petitioner shall revise the site/landscape plan and submit five copies to the Director of Community Development for review and approval, illustrating the following:

    a. Provide additional shrubs to screen parking areas adjacent to the roadway. All parking areas shall be screened along 100 percent of the roadway to a height of 36 inches. Staff recommends adding three Arrowwood Viburnum along the north side of the western row of parking and four Arrowwood Viburnum along the north side of the eastern row of parking to meet minimum requirements.

    b. Remove unnecessary sidewalk and provide shrubs and perennial plantings along the east, west and south side of the building. Staff recommends removing 13 feet of sidewalk at the north end of the east side of the building and adding three A.W. Spirea; 14 feet of sidewalk at the west end of the south side of the building and adding three A.S. Spirea; and 45 feet of sidewalk at the north end of the west side of the building and addition eight A.S. Sprirea and three Densidormis Yew.

    c. Switch proposed ornamental species of Japanese Maple to an appropriate, hardier variety of shade tree shown at the end of parking rows. Staff recommends using two Skyline Honeylocust.

    d. Provide for an "A" bufferyard along the east and south sides of the lot where possible. An "A" bufferyard requires 10 feet of greenspace as well as one tree for every 25 feet of distance along the property line. Staff recommends adding one Sargent Crabapple at the north end of the east property line adjacent to the existing Spruce, and two Colorado Blue Spruce and two Skyline Honeylocust along the south property line to meet minimum requirements.

    e. Provide for a "B" bufferyard along the west side of the lot where possible. A "B" bufferyard requires 15 feet of greenspace as well as one tree for every 12 feet in distance along the property line and one shrub for every 10 feet of distance along the property line. Staff recommends adding two Sargent Crabapple, one Colorado Blue Spruce, and five Seagreen Juniper at the north end of the west property line to meet minimum requirements.

    f. Provide a complete plant list, showing all proposed plan species including: common and botanical names, sizes, root condition, and comments.

    g. Label all existing plant materials correctly by species and quantity. Existing evergreen tree labeled as "Cypress" should be "Colorado Blue Spruce".

    h. Provide plantings around the base of the ground sign to provide softening and year-round interest. Staff recommends adding 10 Stella D'Oro Daylilies on the east and 10 Stella D'Oro Daylilies on the west side of the ground sign in conjunction with the bufferyard plantings to meet minimum requirements.

    i. A five foot wide public sidewalk along the Wise Road frontage of the property shall be illustrated on the plan.

5. Prior to the issuance of a building permit, the petitioner shall submit an acceptable Recycling Plan to the Village's Environmental Compliance Division. Said plan shall be implemented upon the issuance of an occupancy permit.

6. Prior to the issuance of an occupancy permit, the petitioner shall construct a five foot wide public sidewalk along the Wise Road frontage of the property.

7. No repair or maintenance of vehicles shall be performed on the site.

8. All mechanical equipment, both rooftop and ground mounted, shall be screened in accordance with the Village's Zoning Ordinance.

9. A land development permit and fee shall be required for all site work. The fee for such permit is a percentage (per the Village Fee Schedule) of the approved site estimate, including landscaping and lighting. A two year letter of credit or bond will be required for 100 percent of the site work prior to the issuance of

2

CASE NO. Z0405-06

a land development permit.

10. A building permit, in accordance with the current regulations and requirements of the Village of Schaumburg, must be issued within one (1) year from the date of adoption of the enabling ordinance by the Village Board which authorized the development proposal. The development approvals granted herein, without need for further action by any Village board, commission or official, shall become null and void if no building permit is issued within the one (1) year requirement. The Village Board may, by motion and majority vote, extend the development approvals granted herein for periods of up to one (1) year upon the written request of the owner of the subject property or his authorized agent.

11. The Special Use granted herein shall be null and void if the building structure, or portion thereof, for which a Special Use has been granted becomes vacant and remains unoccupied or is occupied for a use other than granted by the Special Use for a continuous period of 6 months.

12. The following plans/exhibits, as revised in accordance with the above conditions, shall be adopted as part of the enabling ordinance:
    a. Site/Landscaping/Elevation/Floor Plan, Sheet 1 of 1, prepared by Naseer Ansari & Associates, dated June 14, 2004; received by the Planning Department on June 15, 2004.
    b. Color Rendering, received by the Planning Department on June 15, 2004.
    c. EIFS Sample Materials, received by the Planning Department on June 15, 2004.

SECTION THREE:  The Director of Community Development of the Village of Schaumburg is hereby directed to issue the necessary permits upon proper application to effectuate the provisions of this ordinance.

SECTION FOUR:  This ordinance shall be in full force and effect from and after its passage, approval, and publication in pamphlet form and posting in the manner provided by law.

AYES:

NAYS:

ABSENT:

ADOPTED this ____13th_____ day of _____JULY_____, 2004.


_____
Village President

ATTEST:


_____
Village Clerk


APPROVED AS TO FORM:


_____
Assistant Village Attorney

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NAJAMUL HASAN and N FAMILY INC.,** ) | |
| **an Illinois Corporation,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **08 C 774** |
| ) | |
| **VILLAGE OF SCHAUMBURG, and** ) | **JUDGE NORGLE** |
| **THOMAS FARACE, TIMOTHY** ) | |
| **OSTERMAN, and J. CHRISTOPHER** ) | |
| **HUFF, individually and in their official** ) | |
| **capacities,** ) | |
| ) | |
| **Defendants.** ) | |

### NOTICE OF FILING

To:     Arthur R. Ehrlich
        Goldman & Ehrlich
        19 South LaSalle Street
        Suite 1500
        Chicago, IL 60603

   PLEASE TAKE NOTICE that on March 19, 2008, we filed electronically with the Clerk
of the United States District Court For the Northern District of Illinois Answer to Complaint.

                          Respectfully submitted,
                          Village of Schaumburg, et al.,
                          Defendants


                          By:  s/ Jack M. Siegel

                          Jack M. Siegel
                          Iain D. Johnston
                          Holland & Knight LLP
                          131 S. Dearborn Street
                          30th Floor
                          Chicago, Illinois 60603
                          (312) 263-3600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of the foregoing Notice of Filing together with Answer to Complaint were served electronically on the following attorneys:

Arthur R. Ehrlich
Goldman & Ehrlich
19 South La Salle Street
Suite 1500
Chicago, IL 60603

On March 19, 2008.

s/ Jack M. Siegel_____

# 5208684_v1